IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| MICHAEL J. GRUBB, d/b/a | * | Chapter 13 |
| GRUBB LUMBER, and TINA GRUBB, | * | |
| Debtors | * | |
| | * | Case No.: 1-04-02690MDF |
| MICHAEL J. GRUBB, d/b/a | * | |
| GRUBB LUMBER, | * | |
| Movant | * | |
| | * | |
| v. | * | |
| | * | |
| KOPPERS INDUSTRIES INC., and | * | |
| FIRST COMMONWEALTH BANK | * | |
| f/k/a UNITAS BANK, | * | |
| Respondents | * | |

## OPINION

Before the Court is the motion of Michael J. Grubb ("Debtor") to sell, free and clear of liens and encumbrances, a one-half interest in a John Deere 444E Wheel Loader ("the Loader") to his father Jay A. Grubb ("Jay") for $10,000.00. Koppers Industries Inc. ("Koppers") and First Commonwealth Bank ("FCB") filed objections to the sale occurring free and clear of their respective liens. In the instant matter, the Court must determine whether either Koppers or FCB has a valid lien. The validity of each lien is determined by whether Debtor owns the Loader in his name alone, or by the entireties with his wife, or jointly with Jay. Debtor avers in his Motion that he jointly owns the Loader with Grubb, each having a one-half interest. Koppers avers that Debtor and his wife own the Loader by the entireties. FCB avers that Debtor owns the Loader in his sole name.

## Factual and Procedural History

In December 1998, Debtor ordered the Loader from Foster F. Wineland, Inc., a heavy equipment dealer. The purchase price for the Loader was $50,000.00, against which a 1981 CAT 920 Wheel Loader ("the CAT") owned by Jay and valued at $27,500.00 would be credited as a trade in. On December 3, 1998, Jay executed an untitled document (hereinafter "the Release") by which he would "release" ownership of the CAT to Debtor in exchange for a 50% ownership interest in the Loader. The remainder of the purchase price, $22,500.00, was to be financed by John Deere Construction Equipment Company (John Deere) secured by purchase money security interest in the Loader. John Deere duly filed a UCC-1 financing statement to perfect its interest in the Loader.

On January 24, 2001, September 5, 2001 and January 11, 2002, Debtor, individually and doing business as Grubb Lumber, executed security agreements with FCB in exchange for certain loans. These agreements gave FCB a blanket security interest in, among other things, all present and future equipment and machinery belonging to Debtor and/or Grubb Lumber. FCB duly recorded UCC-1 financing statements regarding these agreements on January 29, 2001, September 7, 2001, and January 15, 2002, respectively.

On July 17, 2002, Koppers loaned $30,000 to Debtor secured by a note executed by Grubb Lumber, Debtor, and his wife. The note referred to a security agreement which granted Koppers a security interest in the Loader along with certain inventory of Grubb Lumber. On August 8, 2002, Koppers recorded a financing statement executed by Debtor and his wife that listed the Loader as collateral.

A hearing was held on the matter on November 8, 2004. On February 9, 2005, the Court requested that the parties submit evidence regarding the date on which John Deere had received payment in full for the Loader. On March 29, 2005, a stipulation was filed by the parties stating that John Deere had received payment in full on January 20, 2002. Briefs have been filed on the issue of ownership of the Loader, and it is ready for decision.[1]

## Discussion

The precise task before the Court is to identify the specific owner or owners of the Loader as of certain dates, namely the dates on which Koppers and FCB obtained their respective security agreements. While each party has a different perspective on the issue and different documents on which they rely, the resolution of the matter may be simplified by a careful reading of the document that was executed first in time - the Release.

The Release, executed on December 3, 1998, states as follows:

I Jay A. Grubb release the ownership of a 1981 920 CAT wheel loader for the purpose of trading for 50% ownership of a 1991 444E John Deer (sic) wheel loader being purchased by Michael J. Grubb DBA Grubb Lumber.

I Michael J. Grubb agree to release 50% ownership of the 1991 444E John Deer wheel loader to Jay A. Grubb when payments of John Deer (sic) Credit are complete.

The language of the Release clearly provides that Jay intended to convey the CAT to Debtor so that Debtor could use it as a trade in for the Loader. As consideration for this conveyance, Debtor would convey back to Grubb and one-half ownership interest in the Loader *once the payments to John Deere were completed.* As the stipulation indicates, the payments to John

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(A),(N) and (O). This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

3

Deere were completed on January 20, 2002. Thus, according to the Release, Jay's interest would not have arisen, and Debtor would have been the sole owner of the Loader prior to that date. FCB's security agreements with Debtor gave FCB a security interest in any equipment that Debtor owned on the date it was signed; there were three such agreements, all of which were signed prior to January 20, 2002. Therefore, FCB held a valid, perfected security interest in the Loader prior to the date on which the conveyance to Jay was to take place. No conveyance to Grubb could have taken place on January 20, 2002 free of FCB's security interest.

Koppers' has no documents in which an explicit statement of ownership by the entireties is made. Rather, it has only documents from which ownership by the entireties may be inferred. Koppers' evidence included a security agreement signed by both Debtor and his wife in which the Loader is identified as collateral. Although the document was signed by Debtor and his wife, it makes no representations as to ownership of the collateral. Koppers argues that such ownership can be inferred from the fact that other equipment used by Grubb Lumber, such as a pickup truck and a Mack tractor, were owned by the entireties. But unlike the Loader, those vehicles are assets for which titles are issued and which explicitly list Debtor and his wife as the owners. It does not necessarily follow that each and every piece of *untitled* equipment used by Grubb Lumber was owned by the entireties. "The presumption that all property coming into the marriage is matrimonial property is not equivalent to the creation of entireties property, which requires that the property be acquired in joint names of husband and wife." *Fratangelo v. Fratangelo*, 526 A.2d 1195 (Pa. Superior Ct. 1986). I find that insufficient evidence was introduced to establish that the Loader was owned by both Debtors by the entireties. Accordingly, I conclude that since Debtor alone owned the Loader prior to January 20, 2002 ,and since FCB

4

perfected its lien against all of Debtor's equipment prior to that date, Debtor cannot now sell his interest in the Loader to Jay free and clear of FCB's lien. Therefore, FCB's objection to Debtors' motion to sell the Loader free and clear of liens will be sustained.

FCB's Motion for Reconsideration

FCB also has requested the Court to reconsider its order approving a stipulation between Debtors and Koppers that gives Koppers a first priority lien against the Loader. The stipulation at issue provides that Debtors' Chapter 13 plan will be amended to provide that Koppers holds a first priority lien against Debtor's one-half interest in the Loader and that Debtors will sell the Loader free and clear of this lien, but pay Koppers' claim in full with interest from the proceeds of the sale. On February 14, 2005, Koppers, FCB and Debtors executed a stipulation in which all parties agreed that the Loader would be sold and that the respective liens would be treated in the Plan according to the priority accorded them in the instant decision. As I have concluded that FCB holds a perfected lien against the Loader and that Koppers does not, FCB's motion for reconsideration will be granted. Upon the sale of the Loader through the Debtors' Chapter 13 plan, FCB's lien shall be paid as a first priority after the costs of sale. An appropriate order will be entered.

BY THE COURT,

*(signed)* Mary D. France
Bankruptcy Judge

Date: May 2, 2005

*This electronic opinion is signed and filed on the same date.*